**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

HOME AIDE SERVICE OF EASTERN NEW
YORK, INC., doing business as Eddy
Visiting Nurses Association,

                Plaintiff,

    v.                                                No. 04-CV-310
                                                         (LEK/DRH)

MICHAEL O. LEAVITT, Secretary of Health
and Human Services,[1]

                Defendant.

---

**APPEARANCES:**                         **OF COUNSEL:**

NORTHEAST HEALTH, INC.          ROBERT N. SWIDLER, ESQ.
Attorney for Plaintiff                     General Counsel
2212 Burdett Avenue
Troy, New York 12180

HON. GLENN T. SUDDABY           DIANE J. CAGINO, ESQ.
United States Attorney for the        Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
445 Broadway
218 James T. Foley United States Courthouse
Albany, New York 12207-2924

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER [2]

      Plaintiff Home Aide Service of Eastern New York, doing business as Eddy Visiting

Nurse Association ("Eddy"), brought this action pursuant to 42 U.S.C. § 1395ff(b)(1) seeking

---

     [1] Michael O. Leavitt became the Secretary of Health and Human Services on January 26, 2005 and thus will be automatically substituted as the named defendant for the former Secretary, Tommy Thompson. Fed. R. Civ. P. 25(d)(1); 42 U.S.C. § 405(g) (2001).

    [2]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

review of a decision by the Secretary of Health and Human Services ("Secretary") denying payment for services which Eddy furnished to a Medicare recipient. Eddy moves for a reversal of the Medicare Appeals Council's ("Council") denial of reimbursement and the Secretary moves for a judgment on the pleadings. Docket Nos. 6, 9. For the reasons which follow, it is recommended that Eddy's motion be granted and the Secretary's motion be denied.

## I. Background

In December 2001, Holstein began receiving home health services from Eddy for treatment of a stage four decubitus ulcer[3] of the left buttock. T. 6, 104. Holstein was seventy-seven, had multiple sclerosis and quadriplegia, was non-ambulatory, home-bound, and also suffered a neurogenic bladder. T. 31-32, 95, 1113. Eddy provided home health care for the treatment of the ulcer and other care for five sixty-day periods pursuant to a physician-reviewed treatment plan. Initially, the visits were scheduled for three-to-five times a week, eventually were increased to nine times per week, and averaged one-to-two hours per visit. T. 105, 277, 446, 669-70, 1116. The five treatment periods at issue are December 6, 2001 to February 3, 2002; February 4 to April 4, 2002; April 5 to June 3, 2002; June 4 to August 2, 2002; and August 3 to October 1, 2002. T. 8.

Reimbursement was initially denied on the grounds that the care provided to Holstein was not "intermittent" and that the documentation did not support a finite and predictable

---

[3] "[A]n ulceration caused by prolonged pressure in a patient allowed to lie too still in a bed for a long period of time." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1771 (28th ed. 1994).

2

end-date. T. 7, 45, 267, 491, 715. On administrative review, the ALJ found that Eddy was entitled to reimbursement for the five periods of service. T. 30-33. On January 21, 2004, the Council reversed the ALJ's decision on the grounds that Holstein was not eligible for these services and that Eddy was therefore liable for the cost of care as Eddy knew or should have known that these services would not be reimbursable. T. 10. This action followed.

## II.  Standard of Review

To be reimbursed, a provider of home health services must submit a claim for payment to an fiscal intermediary, a private insurance company authorized by the Secretary and responsible for reimbursing providers in accordance with Medicare Rules. 42 U.S.C.§§ 1395g, 1395h; Lutwin v. Thompson, 361 F.3d 146, 149 (2d Cir. 2004). The intermediary may deny payment if it determines that coverage is excluded. 42 C.F.R. §§ 405.702; 405.704(b), (c)(1); 411.402; 421.100(a)(b). A provider may seek reconsideration. 42 C.F.R. §§ 405.710, 405.711. If the claim is denied on reconsideration, the provider may request a hearing before an ALJ who, after reviewing the evidence, makes a finding as to coverage of the services rendered. 42 C.F.R. §§ 405.720, 405.722. If unsatisfied with the ALJ's determination, the provider may then seek review from the Council or the Council may review the case on its own motion. 42 C.F.R. §§ 404.969, 405.724, 404.967. Finally, a provider may seek judicial review of an unfavorable decision of  the Council. 42 U.S.C. § 1395ff(b) (incorporating 42 U.S.C. § 405(g)).

The reviewing court must determine if the Secretary has applied the proper legal standards and if the decision is supported by substantial evidence.  Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

### III. Discussion
### A. Eligibility for Home Health Benefits

A Medicare beneficiary is eligible for coverage of home health services when the beneficiary is confined to home and requires skilled nursing care on an intermittent basis pursuant to a plan established and periodically reviewed by a physician. 42 U.S.C. § 1395f(a)(2)(c) (2003); 42 C.F.R. § 409.42(b). "Intermittent" is defined as "skilled nursing care that is either provided or needed on fewer than 7 days each week, or less than 8 hours of each day for periods of 21 days or less (with extensions in exceptional circumstances when the need for additional care is finite and predictable)." 42 U.S.C. § 1395x(m). "To meet the requirement for 'intermittent' skilled nursing care, a patient must have a medically predictable recurring need for skilled nursing services. In most instances, this definition will be met if a patient requires a skilled nursing service at least once every 60 days." CCH Home Health Medicare & Medicaid Payment Manual § 205.1 (2005). Medicare payment can only be made for home health care which is "reasonable and necessary for the diagnosis and treatment of illness or injury" and which is not custodial in nature. 42 U.S.C. §§ 1395y(a)(1)(A), 1395y(a)(9); Bergeron v. Shalala, 855 F. Supp. 665, 667 (D. Vt. 1994)

4

Here, the ALJ found that because the skilled nursing services provided to Holstein were pursuant to a physician's plan of care which identified an anticipated end-date for the completion of treatment, the criteria for "intermittent" were met. T. 32. The ALJ concluded that the plan noted a date on which it was anticipated the services would end but that due to the severity of the wound and the complexity of the care involved, treatment was not completed by the anticipated date. T. 32. The ALJ also found that the fact that Holstein's wound care and treatment extended beyond the estimated time frame did not render the care non-intermittent. T. 32.

The Council concluded that the ALJ erred in applying the standard for intermittent, reversed the hearing decision, and denied reimbursement. T. 4. The Council found that the five claims submitted did not contain a specific projection of when daily nursing care would end. T. 7. The Council also found that Holstein was unable to change the dressings, that Holstein continued to be non-compliant in staying off the area where the ulcer was located, that family was unwilling to care for the wound, and that the plan's goals were inconsistent with such intermittent care. T. 7. The Council also noted that the care during the course of treatment increased from once to twice a day. T. 7. The Council also relied on the records of the daily nursing visits and testimony at the hearing that Holstein's current regimen would not lead to a quick resolution of the ulcer. T. 7.

For each period of service, Dr. Farah Salehi completed a plan of care which certified that Holstein was confined to her home and required intermittent skilled nursing care. T. 104-06, 419-21, 667-69, 870-73. In addition, on February 1, April 8, and June 14, 2002, Dr. Salehi noted that the daily visits would be reduced to less than five times per week by April 6, June 6, and August 6, 2002. T. 420, 816, 669. This suffices to show that even though

5

Holstein 's treatment was ongoing for months, her treating physician found that there was a finite and medically predictable end to the daily care. There is no statement in the record that Dr. Salehi found that care would be indefinite and he reviewed the treatment plan every sixty days.

While there are indications in the record that the wound was slow to heal, other portions of the record indicate progression. T. 106, 118, 155-58, 282, 322, 333, 610. However, the treating physician prescribed the treatment here and the opinions in the provider records are not those of the treating physician. The Secretary's contention that the provider's representative at the hearing admitted that the care provided to Holstein was not intermittent is not totally supported by the record. In addition, the representative had not treated Holstein, was a supervising community health nurse for Eddy, and her opinion as to intermittent health care is not entitled to significant weight.

While the inability of the beneficiary or a family member to provide care may impact the estimated duration of the care to be provided, it does not necessarily impact the finding that care had a definite and finite end. While records indicate that Holstein was non-compliant for remaining on the wound, she was unable to move herself due to multiple sclerosis which left her without the use of her arms and legs. The plan's goals assessed Holstein's need for care. Moreover, there is no time limit on home health care, provided that the patient has a medically predictable recurring need for skilled nursing services. Here, Dr. Salehi determined that Holstein required such care and there is substantial evidence to the contrary.

Accordingly, it is recommended that Eddy's motion be granted and that the Secretary's motion be denied on this ground.

## B. Payment Liability

Eddy contends that the finding that Eddy knew or should have known that Holstein was not eligible for benefits is not supported by substantial evidence. The Secretary contends that it was correctly determined that Eddy was liable for the services in question.

Payment may be made if the beneficiary and the provider did not know, and could not reasonably have been expected to know, that payment would not be made. 42 U.S.C. § 1395pp(a). When a claim is disallowed as not eligible for payment, the beneficiary may be liable for the payment of the claim. However, since the beneficiary is not likely to know that the services would not be covered, the beneficiary's liability to pay for the services may be waived. 42 U.S.C. § 1395pp; 42 C.F.R. §§ 411.404, 411.406. If the beneficiary's liability for the services is waived, liability may shift to the provider if the provider knew or should have known that payment would be denied. Id.

Here, the Council found that Eddy knew or should have known that Holstein was not eligible for home health services from December 6, 2001 to October 1, 2002 and was therefore liable for the cost of care. As noted supra, substantial evidence exists in the record that the care in question was intermittent and, therefore, reimbursement should be made. The Secretary contends that the provider's statement that the care provided here was not intermittent shows that the provider knew the care would not be covered. However, as noted, the record does not support this contention. In addition, there is no showing that the knowledge of the provider's witness at the hearing, given with the benefit of hindsight, gave the provider the knowledge while services were being provided that payment would not be made.

While the intermediary informed Eddy that subsequent claims would be monitored to

insure that they were intermittent, Eddy could reasonably have believed that pursuant to the physician's plan of care, the services would be covered. In addition, the ALJ's decision supports a finding that Eddy reasonably believed that the services would be covered.

Therefore, it is recommended that Eddy's motion be granted and the Secretary's motion be denied on this ground.

### IV. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that:

1. Eddy's motion for a reversal of the decision of the Council (Docket No. 6) be **GRANTED**; and

2. The Secretary's motion for a judgment on the pleadings (Docket No. 9) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Secretary of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 6, 2006
       Albany, New York

_David R. Homer_
United States Magistrate Judge